UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL NO. 18-CR-00063-JMH

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.             REPLY IN SUPPORT OF MOTION TO SUPPRESS

TEDDY SHAWN HAWKINS                                                          DEFENDANT

** ** ** ** ** ** ** ** **

The Defendant, Teddy Hawkins, by counsel, respectfully submits this Reply in Support of his Motion to Suppress Evidence [Doc. No. 64].

## I. INTRODUCTION

On May 10, 2018, around 3:30 p.m., Defendant Teddy Hawkins was seized and arrested at Valley Park in Lexington, Kentucky. Numerous police officers and DEA agents surrounded Hawkins at the park, guns drawn, while he was playing with his two young children. Law enforcement did not have a warrant for his arrest and were relying on information provided by Robert McGowan, a drug dealer turned informant, *unknown to them prior to that day*. McGowan had been arrested for trafficking at 10:48 that morning and had offered to give up his alleged source of supply, listed in his phone as "Unc2," in exchange for leniency. However, McGowan did not prove himself to be a reliable source, as he repeatedly lied to officers that day, and law enforcement failed to independently corroborate his tips. Therefore, the information he provided did not establish probable cause for Mr. Hawkins' warrantless arrest.

When police conduct a search or seizure without a warrant, the government bears the burden of showing that it was reasonable under the Fourth Amendment. See United States v.

1

Abdi, 463 F.3d 547, 568 (6th Cir. 2006)(concluding that "the Government has failed to meet its burden to show the warrantless search satisfied the Fourth Amendment"); United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002) ("The Government has the burden of proof to justify a warrantless search.") (citation omitted).  As set forth below, the Government has failed to meet its burden based on the information set forth in its Response and the Criminal Complaint.

## II.  COUNTERSTATEMENT OF FACTS

The Government argues that there was probable cause to arrest Hawkins "based on the corroborated information McGowan provided to law enforcement, law enforcement's personal observations, and Hawkins' actions when law enforcement approached him."  However, the evidence demonstrates otherwise.

McGowan established himself to law enforcement as a liar.  Following his arrest, which occurred only about 5 hours before Hawkins' arrest at the park, McGowan lied about everything – including his identify, what he was doing there, and whether he had drugs on him.  The DEA agent who interviewed him at the scene admonished McGowen for "screwing around" with them and noted many times that he was "lying."  See Video 138 at 6:10.[1]  He still refused to be forthcoming.  Id. at 12:40.   The officer asked again, "How many times do I have to sit here and show that you are flat out lying to me?"  Id. at 15:10.  McGowen then lied again about not having drugs on him before finally admitting that cocaine was hidden in his socks.  Id. at 16:00-16:45.  But that was also a lie, because he later admitted that the drugs hidden his socks were heroin, not cocaine.  McGowen said he lied because he was scared.  See id. at 20:40.

---

[1]  The videos cited herein are from body camera footage dated May 10, 2018, which were provided by the Government to the undersigned counsel as part of discovery in this case.  The video numbers refer to the Government's file numbers.  Counsel will provide the court with copies of these videos, which will be introduced at the suppression hearing.

2

The DEA officer that interviewed McGowan at Days Inn told him that cooperating was his one chance at "forgiveness" and leaving without handcuffs. Video 138 at 6:20-6:40. Following continued interrogation and under intense pressure and fear, McGowan offered to give up his alleged source of supply in hopes that he would not go to jail. According to the Criminal Complaint, at approximately 12:43 p.m., McGowan texted "Unc2" a text message stating "I got 6" to telephone number 859-310-0363. See [Doc. No. 1-1, Page ID# 38]. Several other text messages were allegedly sent, all of them vague ("wya") that purportedly arranged a heroin transaction with "Unc." See id. Over the next few hours, McGowan led officers around town, as he continued to provide inconsistent and elusive statements.

McGowan's descriptions of "Unc" and their dealings were vague at best. The officer asked, "he never went by anything else other than Unc?," to which McGowan responded, "I just know him as Unc, that's it." See Video 142 at 15:25-15:30. When asked what Unc looked like, McGowan described him as: "dark skin, short," and said "I can't really describe him," before adding "fro, short hair" and saying he was "pretty much" clean-cut. Id. at 15:30-15:42; 15:55-16:05. McGowan also described "Unc" as "kind of older." See Video 142 at 15:23.

McGowan said he was going to have Unc meet him at Cambridge Park Apartments, which is where they usually met up. Id. at 17:50. He said he did not know where Unc lived. Id. at 21:49. He also told officers that he would typically get to the meeting spot before Unc and only had to wait "about 5 minutes." Id. at 22:00-22:25. Later, after waiting at Cambridge Park Apartments for what appears on the videos to be at least 30 minutes, officers asked, "is it normal for him to make you wait this long?" Video 144 at 0:25.

McGowan then allegedly spoke to Unc on the phone, and Unc asked to change the meeting spot. Video 144 at 2:10-2:20. McGowan told the officers that Unc would be in an Audi.

Id. at 2:40. But later McGowan also described 4 different cars that Unc could be driving. Id. at 16:22-17:24. Officers kept the pressure on McGowan, telling him that "if we can't get Unc, man, the overdose is on you." Video 144 at 0:15.

Some time, maybe 30 minutes to an hour later, McGowan spoke with "Unc" again about meeting at Cambridge Park Apartments. Video 148 at 3:00. This time McGowan told officers that Unc would be in a Suburban. Id. at 3:30; 5:18. He also told officers that Unc said he wasn't going to sell him anything, but would give "it" to him. Id. at 4:41-5:02. A few minutes later, Unc allegedly called McGowan, but the video does not record what the caller says. Id. at 7:49. McGowan then told officers that Unc wanted to meet at the nearby park and would have kids with him. Id. 8:15. McGowan did not know where in the park Unc would be. Id. at 8:18.

Law enforcement proceeded to scan the park, but all they had was a description of a person that was incorrect, a description of a car that would turn out to be incorrect, and no precise meeting time or place. On the radio in the background of the body camera footage, officers were suspicious of every Suburban and several other cars near the park, and officers continued to ask McGowan questions about possible vehicles that Unc could be in. Id. at 11:20 to 15:00.

Officers also questioned McGowan again about the phone call where Unc told McGowan that he was going to give him something, not sell him something, asking: "he's just going to give it to you, is it still gonna be to be a half ounce?" Id. at 15:50. McGowan replied "I don't know what it's gonna be, said he's got something for me, could be more, could be less, you never know." Id. at 15:55-16:10.

Finally, McGowan said he recognized someone walking in the park as Unc. Video 148 at 22:00. However, this individual – later determined to be Hawkins – did not match the

description of Unc that McGowan had given to officer. For example, Hawkins does not have dark skin or an afro; he is bald with a beard. Officers had to ask McGowan several times if he was sure the individual was Unc, likely because the physical description McGowan had given was incorrect. See Video 148 at 24:05; 24:48.

There are also inconsistencies in the Criminal Complaint, which is relied upon by the Government in support of probable cause. According to the Complaint, sometime between 3:20 and 3:30 p.m., as McGowan and Unc spoke, investigators could observe Hawkins at the park using a cell phone during the same timeframe as the conversations. However, this cannot be true. There are several calls from 3:23-3:24 p.m. from McGowan's phone to Unc's phone, which appear to all be missed calls, and none that could have been a conversation. There was a call lasting about a minute at 3:10 p.m. from Unc to McGowan, but this does not match up with the timeline set forth in the Criminal Complaint. Unfortunately, there is not a body camera video of Hawkins' arrest at the park, and the body camera video of McGowan ends shortly after what is presumably this 3:10 p.m. call.

### III. OFFICERS SEIZED AND ARRESTED DEFENDANT WITHOUT PROBABLE CAUSE

Law enforcement may conduct a warrantless arrest of an individual only when the officer has probable cause to believe that the individual has committed a felony or misdemeanor in the officer's presence or a felony away from the officer's presence. United States v. Watson, 423 U.S. 411, 417-18 (1976). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). It requires a "fair probability," Illinois v. Gates, 462 U.S. 213, 238 (1983), which is a "commonsense, practical question" to be judged from the totality of the circumstances. Id. at 230.

5

"In determining whether probable cause exists, we may not look to events that occurred after the [arrest] or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the [arrest]." Smith v. Thornburg, 136 F.3d 1070, 1074-75 (6th Cir. 1998) (citation omitted). "The question … is whether, at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Id. at 1076 (internal quotations and citations omitted). The government has failed to establish that there was probable cause for Defendant's warrantless arrest under this standard.

The Government argues that the officers had probable cause to arrest Hawkins even before they approached him, based on information provided by McGowan. See [Response to Motion to Suppress, Doc. No. 89, Page ID# 510]. However, this information was not sufficient, because McGowan had not established himself as reliable and, prior to closing in on Hawkins at the park, officers took no steps to corroborate that Hawkins was "Unc" and that he had committed or was committing a crime. See United States v. Tuttle, 200 F.3d 892, 894 (6th Cir. 2000) ("information received from an informant whose reliability is not established may be sufficient to create probable cause when *there is some independent corroboration by the police of the informant's information*") (emphasis added); United States v. Howard, 632 F. App'x 795, 804 (6th Cir. 2015) ("what an informant and her tip lack in intrinsic indicia of credibility . . . police must make up for in corroboration").

As detailed in Defendant's Motion to Suppress and the above Counterstatement of Facts, McGowan was a drug dealer who was arrested for trafficking on May 10, 2018 at a Days Inn.

6

He had been known to police for only about 5 hours prior to Hawkins' arrest, and in that time, he had repeatedly provided false information and contradicted himself. Greater scrutiny was therefore required when assessing the credibility of the information he provided to law enforcement. See United States v. Olson, 408 F.3d 366, 370-71 (7th Cir. 2005) ("a newly-arrested informant … merits a greater dose of skepticism when assessing his credibility"); Williamson v. United States, 512 U.S. 594, 607-08 (1994) ("A person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his own role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation.").

Moreover, law enforcement was unable or unwilling to fact-check any information that McGowan provided about his contact "Unc." They could have reviewed video at the Thornton's gas station, for instance, to see if Hawkins had participated in a drug transaction there the previous morning as he claimed. They could have also checked that surveillance video to see if anyone matched the description that McGowan gave for Unc. Or, the police could have also secured a warrant for the phone number listed in McGowan's phone as "Unc2." Instead, the police chose to rely on a tip provided by a previously unknown criminal informant that had lied to them repeatedly, without sufficient independent corroboration about Unc's identity or the alleged crime. This does not establish probable cause.

Furthermore, even if the Government believed the person in the park that they were apprehending was "Unc," based upon McGowan's identification of him, that did not give them probable cause to believe that Hawkins had committed a felony. In United States v. Dickens, No. 17-5721, 2018 U.S. App. LEXIS 25015, at *1 (6th Cir. Sep. 4, 2018), the Sixth Circuit recently found that officers had probable cause for a warrantless arrest based on an informant's

7

predictions, which rose to the level of probable cause. As the court explained, critical to this determination was the reliability of the informant, officers' corroboration of information, and the precise details the informant gave to the police:

> [T]he officers in this case had probable cause to arrest a suspect based on their corroboration of information provided by an informant. Shellie Grubbs told officers that she worked for Defendant, who supplied her with modified checks to deposit. Grubbs showed Officer McKinney one of the allegedly altered checks; she said that she had recently deposited the check via mobile deposit and that Defendant was waiting for it to clear so that he could send Grubbs to withdraw the funds. Police listened as Grubbs called Defendant on speakerphone to arrange a meeting to discuss the status of the deposit. During the call, Defendant made several statements that corroborated Grubbs' story about the fraudulent check as well as Defendant's role as the leader of the conspiracy. Grubbs then told the officers where the meeting would take place, described the car that Defendant would be driving, and told police the precise spot and direction in which Defendant would park. On the way to the meeting, Grubbs called Defendant, and he told her that he had "something" for her. Grubbs told the officers that she thought he was referring to another forged check, raising their suspicion that Defendant was in possession of contraband. Defendant then arrived in the car that Grubbs predicted he would be driving, traveling toward the spot where she predicted he would park. Grubbs pointed at Defendant's vehicle to identify him. In these circumstances, there was at least a fair probability that Defendant had committed felony bank fraud and that he was attempting to join Grubbs for a meeting in furtherance of a conspiracy to commit bank fraud. Grubbs was credible because officers knew her identity and because she had made statements against her own penal interests by admitting that there was a bank fraud scheme that extended beyond the one incident for which she had been arrested.

Id. at *10-11. These are the types of key corroborated details and informant reliability that are missing in this case. McGowan failed to establish himself as a reliable source, failed to provide an accurate description of Unc, and repeatedly contradicted himself.

In arguing there was probable cause to arrest Hawkins when officers approached him at the park, the Government also points to the Criminal Complaint's description of text messages that "Unc" and McGowan allegedly exchanged. See [Doc. No. 89 at Page ID# 507]. According to that Complaint, McGowan texted "Teddy" stating "I got 6" to telephone number 859-310-0363, a contact listed as "Unc2" on his cell phone. See [Doc. No. 1-1, Page ID# 38]. Several

8

other text messages were sent, all of them vague ("wya") that purportedly arranged a heroin transaction. See id. However, these text messages fail to support a finding of probable cause, for two reasons.

First, these texts were not sufficient evidence of any drug deal. There is no explicit mention of drugs or drug quantity. There were only vague texts about meeting up, with no specified time or location. Second, there are significant discrepancies in the records of these text messages, which Government has provided to the undersigned counsel. Although the Cellbrite reports show text messages from McGowan's phone, these text messages are not present on the corresponding Cellbrite report for Hawkins' phone. If the Government intends to rely on texts from McGowan's phone to support its probable cause argument, it should be required to have its technical experts testify as to the reliability of the Cellbrite reports and these puzzling discrepancies.[2]

The Government has not met its burden of proof to demonstrate probable cause. Mr. Hawkins' warrantless seizure and arrest violates the Fourth Amendment, and all fruits resulting therefrom must therefore be suppressed.

IV. **MCGOWAN'S ACTIONS IN RESPONSE TO OFFICERS' SHOW OF FORCE DID NOT PROVIDE PROBABLE CAUSE TO ARREST HIM**

In its Response, the Government argues that Hawkins fled upon seeing law enforcement approach him, which was an additional factor establishing probable cause for the arrest. Indeed, in assessing probable cause, the Sixth Circuit "has held that if officers have reasonable suspicion of criminal activity, and the suspect flees when the officers attempt to stop him, the officers' reasonable suspicion ripens into probable cause." Williams v. United States, 632 F. App'x 816, 823 (6th Cir. 2015) (citing United States v. Dotson, 49 F.3d 227, 230, 231 (6th Cir. 1995)).

---

[2] These text messages were not attached to the Government's response and are not part of the Court's record at this time. Instead, the Government cited to the Criminal Complaint, which references the texts.

9

However, Dotson is distinguishable for several reasons: (1) the Government did not have even reasonable suspicion that Hawkins had committed or was committing a crime when they approached him in the park, and they certainly did not have probable cause to arrest him; (2) law enforcement in this case were not merely conducting an investigatory stop, but instead intended to seize and arrest Hawkins and (3) Hawkins' actions when approached by armed law enforcement was not a "flight" that reasonably turned officers' reasonable suspicion into probable cause to arrest him.

Indeed, an exception to the Fourth Amendment's warrant requirement permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion requires "at least a minimal level of objective justification for the stop." Id. at 674 (2000). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." Id. at 123-24 (quoting Terry, 392 U.S. at 27). The Fourth Amendment requires the court to look at the totality of the circumstances surrounding an incident in determining whether officers had a reasonable suspicion. Terry, 392 U.S. at 9. Here, officers did not even have reasonable suspicion that Hawkins had committed or was committing a crime when they approached him in the park, because McGowen was not a reliable source of information and the officers did not independently corroborate his allegations.

Furthermore, there is no evidence that law enforcement intended anything other than a seizure and arrest of Hawkins when they surrounded him from all directions at the park with their guns drawn. The DEA agent driving McGowen had just told these officers that Hawkins had noticed undercover police cars and that he was intending to move. The agent suggested that

police "take him." Video 148 at 26:32. What happened next, as will be demonstrated at the probable cause hearing, was not an investigative stop, but a full-blown seizure, which took place almost immediately. Probable cause was therefore required when officers approached Hawkins with the intent to arrest him.

Finally, this is not a case where there was an extended chase in order to evade officers. Hawkins submitted to the officers' show of authority and was seized in a matter of seconds. His actions did not provide probable cause for an arrest that was already occurring, nor was it indicative of guilt in the same way the defendant's flight was in Dotson. Refusal to cooperate with police does not furnish the objective justification required for a stop. Florida v. Bostick, 501 U.S. 429, 437 (1991). Nor does other elusive behavior. See United States v. Bowman, 884 F.3d 200, 214 (4th Cir. 2018) (nervousness, belongings, and inability to provide address from which he said he picked up passenger did not provide reasonable suspicion); United States v. Monsivais, 848 F.3d 353, 361 (5th Cir. 2017) (appearing nervous and repeatedly placing hands in pockets did not give rise to reasonable suspicion of criminal activity). To find that Hawkins' actions on that day – as a black male being confronted by multiple weapon-yielding individuals – provides probable cause for a warrantless arrest that was already in progress, is too far outside the bounds of the Fourth Amendment.

## V. CONCLUSION

For the foregoing reasons, Mr. Hawkins' warrantless seizure and arrest violates the Fourth Amendment, and all fruits resulting therefrom must therefore be suppressed.

Respectfully submitted,

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.
Law Offices of Thomas C. Lyons
201 West Short Street, Suite 800
Lexington, Kentucky 40507
859-231-0055
thomaslyons@hotmail.com
*Counsel for Defendant, Teddy Hawkins*

## **CERTIFICATE OF SERVICE**

    This is to certify that a true copy of the foregoing Reply to Motion to Suppress, has been served on January 11, 2019 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.

Cc:    Teddy Hawkins